## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN JOSEPH KOEHLER, | : | Civil No. 3:12-CV-00291 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | THIS IS A CAPITAL CASE |
| | : | |
| JOHN E. WETZEL, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is Petitioner's motion, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to alter or amend the judgment denying his petition for writ of habeas corpus.  (Doc. 55.)  For the reasons stated below, the court will deny Petitioner's motion.

### BACKGROUND AND PROCEDURAL HISTORY

Petitioner was convicted of two counts of first-degree murder and related offenses and sentenced to death following a 1996 jury trial in the Court of Common Pleas of Bradford County, Pennsylvania.  *Commonwealth v. Koehler*, 737 A.2d 225, 229, 232 (Pa. 1999) ("*Koehler-I*").  The murder victims were Regina Clark ("Clark"), with whom Petitioner had been romantically involved, and her nine-year-old son, Austin Hopper ("Hopper").  *Id.* at 230.  Clark and Hopper were fatally shot by eighteen-year-old William Curley ("Curley").  *Id.*  Curley, who had known Petitioner since he was very young, committed the murders at the

1

urging and insistence of Petitioner, as part of his training of Curley for a future career as a "hit man." *Id.*

The Pennsylvania Supreme Court affirmed Petitioner's convictions and sentence on direct appeal. *Id.* at 246. Petitioner subsequently sought relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541–9546. *Commonwealth v. Koehler*, 36 A.3d 121, 126 (Pa. 2012) ("*Koehler-II*"). The PCRA court dismissed the petition, and the Pennsylvania Supreme Court affirmed that decision. *Id.*

Petitioner initiated this action on February 13, 2012, by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) By memorandum and order dated May 14, 2015 ("2015 memorandum opinion"), the court denied the petition and declined to issue a certificate of appealability.[1] *Koehler v. Wetzel*, No. 3:12-CV-00291, 2015 WL 2344932, at *105 (M.D. Pa. May 14, 2015) ("*Koehler-III*"). On June 11, 2015, Petitioner timely filed the instant motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure ("Rule 59(e) motion"). (Doc. 55.) Respondents filed an opposing brief on October 26, 2015. (Doc. 57.) Petitioner did not file a reply brief.

---

[1] The 2015 memorandum opinion was issued by the late United States District Judge A. Richard Caputo, to whom the case was originally assigned. The case was reassigned to the undersigned on March 25, 2020.

On March 8, 2016, while the Rule 59(e) motion was pending, the court granted Petitioner's unopposed motion for stay and abeyance of the federal habeas proceedings to permit him to exhaust state-court remedies for a claim based on newly discovered evidence.  (Docs. 58, 60, 62.)   On November 6, 2023, the court issued an order lifting the stay and granting Petitioner's unopposed request to permit the parties to file supplemental briefs to update their previous filings relating to the Rule 59(e) motion.  (Doc. 97.)  Petitioner filed a supplemental brief on January 3, 2024.  (Doc. 102.)  Respondents filed a supplemental brief on March 6, 2024.  (Doc. 106.)  Briefing is now complete, and the motion is ripe for the court's disposition.

## STANDARD OF REVIEW

Rule 59(e) of the Federal Rules of Civil Procedure allows a litigant to file a "motion to alter or amend a judgment" no later than 28 days after the entry of judgment.  Fed. R. Civ. P. 59(e).  The scope of a Rule 59(e) motion is "extremely limited."  *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011).  The moving party must show at least one of the following grounds: (1) "an intervening change in the controlling law;" (2) "the availability of new evidence that was not available" at the time of the challenged decision; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice."  *Id.* (citation and quotation marks omitted).  Rule 59(e) motions "are not to be used as an opportunity to relitigate the

case." *Id*.; *see also Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (holding that advancing same arguments previously presented in party's complaint and motion "is not a proper basis for reconsideration"). Nor does Rule 59(e) provide a vehicle to raise "new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (citation omitted).

In federal habeas cases, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in relevant part at 28 U.S.C. § 2254(d), imposes "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations and quotation marks omitted). Federal courts may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Regardless of whether § 2254(d) applies, "a determination of a factual issue made by a State court shall

be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

In assessing whether a state-court decision contravenes or unreasonably applies "clearly established Federal law" under § 2254(d)(1), the state-court decision is "measured against [the Supreme] Court's precedents as of the time the state court renders its decision and cannot be held unreasonable only in light of later decided cases." *Brown v. Davenport*, 596 U.S. 118, 136 (2022) (citation and quotation marks omitted). Circuit precedent may not "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (citation omitted). However, circuit precedent may be relevant to review under § 2254(d)(1) if it demonstrates that a particular principle was clearly established by Supreme Court precedent at the time of the state-court decision. *See Brown v. Superintendent Greene SCI*, 834 F.3d 506, 518 n. 9 (3d Cir. 2016) (citing *Marshall*, 569 U.S. at 64).

A state-court decision is based on an "unreasonable determination of the facts" under § 2254(d)(2) if the state-court determination is "objectively unreasonable" in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citation omitted). A state-court factual determination is not unreasonable "merely because the federal habeas court

5

would have reached a different conclusion in the first instance" or "if reasonable

minds reviewing the record might disagree about the finding in question." *Wood v.*

*Allen*, 558 U.S. 290, 301 (2010) (citations, quotation marks, and brackets omitted).

DISCUSSION

**A. The Court Will Not Alter or Amend the Judgment on Claim I.**

Petitioner asserts in his Rule 59(e) motion and supplemental brief that the

court made numerous errors in denying relief on Claim I.  (Doc. 55, pp. 4–9;

Doc. 102, pp. 7–26.)[2]  As relevant here, Claim I alleges that the Commonwealth

violated *Brady v. Maryland,* 373 U.S. 83 (1963), by failing to disclose a

non-prosecution agreement it had entered into with prosecution witness Kirk

Schrader ("Schrader").  (Doc. 1, ¶¶ 13–18, 43–64.)  The court denied relief on this

claim, primarily based on AEDPA deference to the Pennsylvania Supreme Court's

factual determination that there was no undisclosed non-prosecution agreement

which might have impeached Schrader because he believed at the time of his

testimony that any non-prosecution agreement had been revoked.  *Koehler-III*,

2015 WL 2344932, at *23 (citing *Koehler-II*, 36 A.3d at 137–38).

In his Rule 59(e) motion, Petitioner asserts that the record does not support

this factual determination and that the court erred in concluding that Petitioner

failed to show he was entitled to relief under *Giglio v. United States*, 405 U.S. 150

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

(1972).  (Doc. 55, pp. 4–8.)  In his supplemental brief, Petitioner asserts that recent caselaw demonstrates that the court erred in its analysis of the non-prosecution agreement and the issues of materiality and prejudice.  (Doc. 102, p. 3.)  To provide the necessary context, the court will first summarize the relevant factual and procedural background and will then turn to Petitioner's assertions of error.

### 1.  Factual and Procedural Background

At Petitioner's trial, Curley's testimony provided the "primary evidence that [Petitioner] not only solicited Curley to kill the victims, but also threatened to kill Curley if he did not carry out the murders."  *Koehler-III*, 2015 WL 2344932, at *13 (quoting *Koehler-II*, 36 A.3d at 133).  Curley admitted that he fatally shot the victims in the garage at Schrader's home, but he portrayed Petitioner as the driving force in planning and carrying out the murders, including by instructing Curley when and where to shoot the victims and how to hide their bodies.  *Id*. at *2-3 (quoting *Koehler-I*, 737 A.2d at 231).  Schrader, who was present when Curley shot Clark, was called as a prosecution witness to describe his knowledge of the murders and the surrounding circumstances.  *Id*. at *19 (quoting *Koehler-II*, 36 A.3d at 135.)

Immediately prior to Schrader's testimony, a sidebar was held by the trial court, Court of Common Pleas Judge Jeffrey A. Smith ("Judge Smith").  *Id.* at *20 (citing Notes of Testimony, Trial, 4/3/96 a.m. ("NT 4/3/96 a.m."), pp. 66–71

[Doc. 50-55, pp. 18–23]).[3]  At the sidebar, Petitioner's counsel, Leonard Frawley

("Frawley"), expressed concern that Schrader might not understand that the

information he would testify to could be used against him.  *Id.* (citing

NT 4/3/96 a.m., pp. 67–68 [Doc. 50-55, pp. 19–20]).  The prosecutor, District

Attorney Robert McGuiness ("McGuiness"), stated that he had personally

communicated to Schrader that his testimony could be used against him.  *Id*. (citing

NT 4/3/96 a.m., pp. 68–69 [Doc. 50-55, pp. 20–21]).  Judge Smith ascertained that

Schrader was represented by counsel, Marshall Dawsey ("Dawsey"), who had been

notified that Schrader was being called as a witness but had not indicated any

desire to be present for his testimony.  (NT 4/3/96 a.m., pp. 68–69 [Doc. 50-55,

pp. 20–21].)  Judge Smith then questioned Schrader at the bench and established

that he was choosing to testify after discussing with Dawsey the possibility that his

testimony might be used against him.  *Koehler-III*, 2015 WL 2344932, at *20

(quoting NT 4/3/96 a.m., p. 70 [Doc. 50-55, p. 22]).

Before the jury, Schrader testified "that he observed Curley and [Petitioner]

discuss plans to kill Clark, and that later that day, he heard gunshots being fired in

his garage, and saw Curley in the garage with his arm extended."  *Id.* at *19

(quoting *Koehler-II*, 36 A.3d at 135).  Schrader testified that he understood that he

---

[3] For clarity and convenience, the court cites the relevant transcript pages using the citations to
the Notes of Testimony that appear in the 2015 memorandum opinion, followed in brackets by
the corresponding page numbers from the CM/ECF header.

"could be charged" in the murder case, that his testimony could be used against him, that he was not receiving any favors, and that he had not been made any promises for his testimony. *Id.* at *20 (quoting NT 4/3/96 a.m., p. 109 [Doc. 50-56, p. 11]).

Trooper Nicholas Madigan ("Madigan") and former District Attorney Robert Fleury ("Fleury") also testified as to what Schrader was told concerning possible prosecution. *Id.* at *20, *23 n. 8. Madigan testified that he met with Schrader and Dawsey on May 5, 1995 to interview Schrader as part of the murder investigation. (Notes of Testimony, Trial, 4/3/96 p.m. ("NT 4/3/96 p.m."), pp. 62–63 [Doc. 50-52, pp. 15–16].) Madigan read his report of the interview to the jury, which recounted that Fleury made the following statement at the beginning of the interview: "District Attorney Fleury told Schrader, he was being interviewed as a witness in this case, not as a suspect, and informed him that prosecution would not be sought against him for his involvement." *Koehler-III*, 2015 WL 2344932, at *23 n. 8 (quoting NT 4/3/96 p.m., p. 64 [Doc. 50-52, p. 17]). Fleury, on the other hand, testified that he told Schrader that he was not a suspect, but if Fleury found out later that Schrader was not "telling everything as it is, then watch out," by which Fleury meant that Schrader should be prepared for possible prosecution. *Id.* at *20 (quoting Notes of Testimony, Trial, 4/4/96 a.m., p. 69 [Doc. 50-61, p. 22]).

9

One month after Petitioner's trial, Schrader was arrested and charged with several crimes stemming from his involvement in the murders. *Id*. at *21 (quoting *Koehler-II*, 36 A.3d at 136). Schrader, represented by Dawsey, filed a pretrial motion seeking dismissal of the charges on the ground that he had entered into a non-prosecution agreement with the Commonwealth. *Id.*; *see also* (*Commonwealth v. Schrader*, 9-CR-02-0286 (Bradford Ct. Com. Pl.), Notes of Testimony, Omnibus Pre-trial Hearing, 11/22/96 ("Pretrial NT"), pp. 1-8 [Doc. 48-1, pp. 6-13]).

Judge Smith, as the trial judge in Schrader's case, held a hearing on the motion and heard testimony from Fleury, Madigan, and Dawsey. *Id.* at *23 n. 8. Fleury testified, consistent with his testimony at Petitioner's trial, that he told Schrader that he was not considered a suspect, but not that he would not be prosecuted. *Id*. (citing Pretrial NT, pp. 10–11 [Doc. 48-1, pp. 15–16]). Madigan testified that the statement in his report that Fleury told Schrader that he would not be prosecuted may have been Madigan's own inference and that he had no recollection of Fleury making that statement to Schrader. *Id*. (citing Pretrial NT, pp. 44, 51 [Doc. 48-1, pp. 49, 56]). Dawsey, on the other hand, testified that Fleury had in fact promised not to prosecute Schrader for his involvement in the murders if Schrader testified truthfully at Petitioner's trial. *Id*. (citing Pretrial NT, p. 66 [Doc. 48-1, p. 71]).

10

Faced with these conflicting accounts, Judge Smith credited Dawsey's testimony, which he noted was corroborated by Madigan's report, and found that Fleury entered into a non-prosecution agreement that induced Schrader to make incriminating statements in his police interview on May 5, 1995. *Id.* at *21 (citing *Koehler-II*, 36 A.3d at 136); *see also* (Doc. 34-5, pp. 8–10).  Based on this non-prosecution agreement, Judge Smith dismissed the charges against Schrader.  *Id.*; *see also* (Doc. 34-5, pp. 22–23).

Petitioner relied on the resolution of the Schrader matter to claim in his PCRA petition that the Commonwealth had violated *Brady* by failing to disclose Schrader's non-prosecution agreement before trial.  *Koehler-II*, 36 A.3d at 135–36.  Judge Smith, as the PCRA judge, held an evidentiary hearing and heard testimony from McGuiness that was consistent with his representation in the sidebar prior to Schrader's testimony at Petitioner's trial.  *Id.* at 137.  McGuiness testified that, prior to Petitioner's trial, he personally informed Schrader that there was no binding agreement between him and the Commonwealth, that the Commonwealth would not make any offer, and that Schrader could testify as a witness for the prosecution or not, as it was his choice.  *Id.* (citing Notes of Testimony, PCRA Hearing, 6/1/06, pp. 121–22 [Doc. 50-93, pp. 23–24]).

Based on this testimony, Judge Smith held that Petitioner had failed to prove a *Brady* violation, reasoning as follows:

11

[Petitioner] also argued that a Brady rule violation arose when the Commonwealth failed to disclose to the defense a non-prosecution agreement with Schrader and failed to correct Schrader's testimony that there was no such agreement.  There is no merit to the claim, because, although this court previously ruled that there was a non-prosecution agreement, see, <u>Commonwealth v. Schrader</u>, Bradford County, 96CR000286 (Smith, J.), that agreement had been revoked by the time Schrader testified at [Petitioner's] trial.

While this court's opinion [in] <u>Schrader</u>, <u>id</u>., ruminated on the question whether the Commonwealth could lawfully revoke the non-prosecution agreement after Schrader had fully cooperated with the prosecution as agreed, <u>id</u>., at n. 9, the court's observations were clearly *obiter dictum*. More importantly, however, at the time Schrader testified at [Petitioner's] trial, the non-prosecution agreement clearly had been repudiated by the Commonwealth, whether lawfully or not, and Schrader himself acknowledged that he had no form of immunity.

The question of Schrader's motives for testifying, and his possible bias, must necessarily be viewed from his perspective, not that of the District Attorney or the defense; and there is not a scintilla of evidence that when Schrader testified *at [Petitioner's] trial*, he believed there was any promise of leniency from the Commonwealth.  In short, there was no undisclosed agreement which might have impeached Schrader and no undisclosed exculpatory evidence.

Lastly, while [Petitioner's] PCRA counsel and trial counsel have described Schrader's testimony as "critical" or "important", it was not. Even without Schrader's testimony, the evidence points ineluctably to [Petitioner's] guilt beyond a reasonable doubt.  There is no plausible theory that Curley acted alone or that he acted only with Schrader. Curley acted with [Petitioner].  There is no doubt.  Even if [Petitioner] could establish the premise of his claims that Schrader testified under an undisclosed non-prosecution agreement, [Petitioner] was not prejudiced.

(Doc. 34-3, pp. 11-12 (emphasis in original).)

The Pennsylvania Supreme Court affirmed this decision, reasoning as

follows:

> We conclude that the PCRA court's factual findings are supported by
> the record and its legal conclusions are free from error.  There was
> ample evidence of record to support the finding that Schrader believed
> that his testimony at [Petitioner's] trial could subsequently be used
> against him, and, therefore, had no incentive to fabricate testimony in
> exchange for favorable treatment by the Commonwealth . . .
> Considering that the PCRA court credited the testimony establishing
> that Schrader believed the non-prosecution agreement had been
> revoked, it strains logic to conclude that [Petitioner] could have used
> such agreement to impeach Schrader's testimony to demonstrate bias
> on the part of Schrader.  This *Brady* claim, therefore, fails.

*Koehler-II*, 36 A.3d at 138.

This court denied federal habeas relief.  *Koehler-III*, 2015 WL 2344932, at

*23–25.  Applying § 2254(e)(1), the court presumed the correctness of the factual

finding that Schrader believed that his testimony could be used against him

because Petitioner did not present clear and convincing evidence to the contrary.

*Id*. at *23 (citing *Koehler-II*, 30 A.3d at 137–38).  On this basis, the court held that

the Pennsylvania Supreme Court's decision that there was no undisclosed

agreement which may have impeached Schrader was not contrary to, or an

unreasonable application of, clearly established federal law or based on an

unreasonable determination of the facts.  *Id*. (citing § 2254(d)(1)-(2)).

The court also rejected Petitioner's effort in his reply brief to "repackage"

his *Brady* claim as a violation of *Giglio*, 405 U.S. 150.  *Id.* at *24.  The court held

that the *Giglio* claim failed because (1) there was no evidence that Schrader

committed perjury or that the Commonwealth knew or should have known of any

perjury and (2) Petitioner failed to demonstrate any reasonable likelihood that the alleged false testimony could have affected the verdict. *Id*.

Finally, the court held that, even if Petitioner had demonstrated that Schrader's testimony implicated his federal constitutional rights, any error would be harmless because the court was not in grave doubt that Schrader's testimony had a "substantial and injurious effect or influence" on the jury's verdict. *Id*. at *25 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation and quotation marks omitted)).

### 2. Analysis

With this background in mind, the court will first address the assertions of error in Petitioner's Rule 59(e) motion and then turn to the arguments based on recent caselaw in Petitioner's supplemental brief. (Docs. 55, 102.)

### i. AEDPA Deference to State-Court Factual Determination

Petitioner first asserts that the court erred in accepting the Pennsylvania Supreme Court's determination that Schrader believed that any non-prosecution agreement had been revoked prior to his testimony at Petitioner's trial. (Doc. 55, p. 4.) Petitioner argues that this conclusion is "wholly inconsistent" with Judge Smith's earlier finding that Schrader willingly inculpated himself during his police interview because he had been told that he would not be prosecuted if he cooperated. (*Id.* at 6 (citing Doc. 34-3, p. 10).)

14

Petitioner made the same argument on this point in his petition and supporting brief.  (Doc. 1, ¶¶ 47–57; Doc. 34, pp. 38–40.)  As discussed above, the court rejected Petitioner's position, holding that he had not presented clear and convincing evidence to rebut the factual finding that Schrader believed that the non-prosecution agreement had been revoked at the time of Petitioner's trial. *Koehler-III*, 2015 WL 2344932, at \*23 (citing *Koehler-II*, 30 A.3d at 137–38).  Merely advancing the same arguments previously presented to the court is not a proper basis for reconsideration under Rule 59(e).  *Lazaridis*, 591 F.3d at 669.

In addition, the court is not persuaded that its decision on this point is erroneous.  The purportedly inconsistent factual findings concern what Schrader believed at two different points in time.  In addressing Schrader's motion to dismiss, Judge Smith focused on what Schrader believed prior to inculpating himself in his police interview, which occurred over one year prior to Petitioner's trial.  (Doc. 34-5, pp. 9–10.)  In addressing Petitioner's *Brady* claim, Judge Smith focused on what Schrader believed when he testified at Petitioner's trial. (Doc. 34-3, pp. 11–12.)  In both cases, Judge Smith's findings are based on the evidence of what Schrader was told at the particular time.  The purported inconsistency of the two findings reflects the inconsistent communications with Schrader by two different District Attorneys at two different points in time.

15

Petitioner also argues that the fact that Schrader sought to enforce the non-prosecution agreement "belies any speculation as to what he believed" when he testified against Petitioner.  (Doc. 55, pp. 6–7.)  However, Dawsey represented Schrader in his criminal case and provided the testimony that was the basis for Judge Smith's decision to dismiss the charges.  (Docs. 48-1, pp. 6–13; Doc. 34-5, pp. 8–10.)  Dawsey's effort to enforce the non-prosecution on Schrader's behalf does not provide clear and convincing evidence, as required under § 2254(e)(1), to rebut Judge Smith's finding that Schrader believed when he testified at Petitioner's trial that the non-prosecution agreement had been revoked.

For these reasons, the court concludes that Petitioner has not demonstrated "the need to correct a clear error of law or fact or to prevent manifest injustice" with respect to this aspect of the court's decision.  *See Blystone*, 664 F.3d at 415 (citation and quotation marks omitted).

## ii.  *Giglio* Claim

Petitioner next argues that the court failed to recognize that he is entitled to relief because the facts in his case are "on all fours" with the facts in *Giglio*, 405 U.S. at 151–53.  (Doc. 55, pp. 7–8.)  Petitioner presented an extensive argument on this point in his reply brief in support of the petition.  (Doc. 48, pp. 13–19.)  As discussed above, the court disagreed with his position, holding that Petitioner had not established a *Giglio* violation because he had not shown that Schrader

16

committed perjury, that the Commonwealth knew or should have known of any alleged perjury, or any reasonable likelihood that Schrader's allegedly false testimony could have affected the verdict. *Koehler-III*, 2015 WL 2344932, at *24.

The court is not persuaded that this conclusion requires reconsideration. First, as already noted, merely advancing the same arguments already rejected by the court is not a proper basis for reconsideration under Rule 59(e). *Lazaridis*, 591 F.3d at 669. Second, the court notes that Petitioner's case differs significantly from *Giglio*. Any conclusion that Schrader committed perjury is precluded by the state-court factual finding that he believed that he did not have a non-prosecution agreement at the time of his testimony. *Giglio* did not involve any similar state-court factual finding, nor was the Supreme Court's scope of review constrained by AEDPA deference under §§ 2254(d) and (e)(1). *Giglio*, 405 U.S. at 152–53. Given these significant differences, the court is unpersuaded that *Giglio* requires relief in Petitioner's case. Accordingly, the court concludes that Petitioner has not demonstrated "the need to correct a clear error of law or fact or to prevent manifest injustice" as to this aspect of the court's decision. *See Blystone*, 664 F.3d at 415 (citation and quotation marks omitted).

Petitioner's final argument in his Rule 59(e) motion is that the court erred in its analysis of harmless error under *Brecht*, 507 U.S. 619. (Doc. 55, p. 8). The court finds that it is unnecessary to address this argument because it has been

17

superseded by a Third Circuit decision holding that the *Brecht* harmless error rule
does not apply to *Giglio* violations. *See Haskell v. Superintendent Greene SCI*,
866 F.3d 139, 152 (3d Cir. 2017). This point is raised in Petitioner's supplemental
brief and will be discussed in the next section of this memorandum.

### iii.    Intervening Changes in Controlling Law

Petitioner's supplemental brief asserts that decisions issued since he filed his
Rule 59(e) motion warrant reconsideration of various aspects of the court's
decision, based on both intervening changes in controlling law and the need to
correct a clear error of law or to prevent manifest injustice. (Doc. 102, p. 3.)

As a preliminary matter, the court notes that AEDPA limits the court's
review under § 2254(d)(1) to the question of whether the Pennsylvania Supreme
Court contravened or unreasonably applied Supreme Court precedent that existed
at the time of its decision. *See Brown*, 596 U.S. at 136. Petitioner argues that
more recent decisions "substantially alter and clarify" the law governing his *Brady*
claims, but without offering any analysis to reconcile this aspect of his argument
with AEDPA's restrictions. *See* (Doc. 102, p. 2). Where those restrictions apply,
the court may consider more recent caselaw only to the extent that it demonstrates
that a particular principle was clearly established by Supreme Court precedent at
the time of the Pennsylvania Supreme Court's decision. *See Brown*, 834 F.3d at

518 n. 9.  With this limitation in mind, the court turns to the arguments in
Petitioner's supplemental brief.

### a.  "Formal Deal" Not Required for *Brady* Violation

Petitioner first argues that the court erred in rejecting his *Brady* claim based
on a determination that there was no "binding agreement" at the time of Schrader's
testimony.  (Doc. 102, p. 7.)  He contends that recent caselaw demonstrates that
both this court and the Pennsylvania Supreme Court mistakenly focused only on
whether a "formal deal" existed, failing to consider that Schrader could have been
impeached for bias based on an expectation of favorable treatment.  (*Id*. at 11.)

The flaw in this argument is that neither decision depended on the
distinction between a formal deal and an expectation of favorable treatment.  The
Pennsylvania Supreme Court did not rely on the absence of a formal deal at the
time of Schrader's testimony, but instead relied on the absence of impeachment
value based on Judge Smith's factual finding that Schrader believed that the
agreement had been revoked prior to his testimony.  *Id.* (citing *Koehler-II*, 36 A.3d
at 137–38).  This court held that the Pennsylvania Supreme Court did not
unreasonably apply clearly established federal law in concluding that there was "no
undisclosed agreement *which may have impeached*" Schrader.  *Koehler-III*, 2015
WL 2344932, at *23 (emphasis added).

19

The caselaw that Petitioner relies on provides no reason to reconsider this decision.  In *Wearry v. Cain*, 577 U.S. 385 (2016) (per curiam), decided on de novo review, the issue involved undisclosed police notes revealing that a prosecution witness twice sought a deal to reduce his existing sentence in exchange for testifying against the defendant and was told by police that they would "talk to the D.A. if he told the truth."  *Id.* at 390 (quotation marks omitted).  The Court held that this undisclosed evidence was material because it suggested that the witness's motivation for testifying was the possibility of a reduced sentence, rather than his sister's relationship with the victim's sister, as the witness had testified at trial and the prosecutor had emphasized in closing argument.  *Id.* at 394.  Aside from being decided long after the Pennsylvania Supreme Court's decision in Petitioner's case, *Wearry* does not address AEDPA deference to a state-court factual finding that undisclosed evidence lacked impeachment value based on what the witness believed at the time of his testimony.

The other decisions Petitioner relies on to support his argument on this point are lower federal court decisions that do not qualify as "clearly established Federal law" under § 2254(d)(1).  *See Brown*, 596 U.S. at 136.  In addition, those decisions are similarly inapposite to the issues in Petitioner's case.  *See Haskell*, 866 F.3d at 146 (on de novo review, holding that uncontested facts in the record demonstrated that witness lied when she testified that she expected nothing in return for her

testimony and that prosecutor knew the testimony was false and failed to correct it); *Bridges v. Sec'y Pa. Dep't of Corr.*, 706 F. App'x 75, 82–83 (3d Cir. 2017) (nonprecedential ) (on de novo review, addressing only materiality of undisclosed police reports because prosecution did not dispute that reports were favorable and had been suppressed); *Harshman v. Superintendent*, 368 F. Supp.3d 776, 793 (M.D. Pa. 2019) (on AEDPA review, holding that undisclosed letters from prosecutor to parole board had "self-evident" impeachment value because letters "unambiguously" indicated that prosecutor agreed to contact parole board on witness's behalf in exchange for witness's cooperation).

Petitioner also relies on *Brumfield v. Cain*, 576 U.S. 305 (2015), to argue that the Pennsylvania Supreme Court unreasonably determined that no binding non-prosecution agreement was in place when Schrader testified because that determination conflicts with governing law that prevents a prosecutor from unilaterally revoking a non-prosecution agreement. (Doc. 102, pp. 11-13.)  In *Brumfield*, the Supreme Court addressed a state-court decision denying the petitioner an opportunity to prove that he was intellectually disabled and therefore could not be executed under *Atkins v. Virginia*, 536 U.S. 304 (2002).  *Brumfield*, 576 U.S. at 307.  The Court held that the state-court decision rested on factual determinations that were unreasonable under § 2254(d)(2) because the state court

failed to recognize that certain evidence could support a finding of intellectual disability as defined by the governing state-law standard. *Id*. at 314–22.

The court is unpersuaded that *Brumfield* requires reconsideration of its decision. Because, as already discussed, the Pennsylvania Supreme Court's decision is not based on the absence of a binding agreement, any governing law on that subject is not relevant. Therefore, unlike in *Brumfield*, the state court's factual determinations do not reflect a misunderstanding of a governing legal standard.

For the foregoing reasons, the court concludes that Petitioner has not shown that reconsideration of this aspect of the court's decision is required based on "intervening changes in controlling law" or "the need to correct a clear error of law . . . or to prevent manifest injustice." *See Blystone*, 664 F.3d at 415 (citation and quotation marks omitted).

### b. Materiality

Petitioner next argues that recent caselaw demonstrates that the court erred in its materiality analysis by mistakenly equating materiality with a sufficiency of the evidence test and failing to consider the importance of Schrader's testimony to Petitioner's guilt and punishment. (Doc. 102, pp. 14–21.) As discussed below, the court concludes that these arguments are premised on a misunderstanding of the court's materiality analysis and caselaw that is not pertinent to that analysis.

22

First, the court did not mistakenly apply a sufficiency of the evidence test. Instead, the court concluded that, due to the strength of the significant independent evidence of Petitioner's guilt, there is no reasonable likelihood that any false testimony could have affected the verdict.  *Koehler-III*, 2015 WL 2344932, at *24.

Second, the court did not fail to consider the importance of Schrader's testimony to Petitioner's guilt.  Instead, the court concluded that the prosecution "presented significant evidence independent of [Schrader's] testimony to prove to the jury that it was [Petitioner] who conspired with, and in fact expressly directed, [Curley] to kill [Clark] and [Hopper]."  *Id.* at *24.  Most significant was Curley's testimony, which "'served as the primary evidence that [Petitioner] not only solicited Curley to kill the victims, but also threatened to kill Curley if he did not carry out the murders.'"  *Id*. at *13 (quoting *Koehler-II*, 36 A.3d at 133).  The independent evidence also included Kerrien Ramsey's testimony that Petitioner showed her a loaded gun a day or two before the murders and told her that he intended to kill Clark and Charline Benefield's testimony that Petitioner told her that he was training Curley to be a hit man.  *Id.* at *1 (quoting *Koehler-I*, 737 A.2d at 230).  In view of the strength of the independent evidence of Petitioner's guilt, the court concluded that that there is no reasonable likelihood that any false testimony by Schrader could have affected the verdict.  *Id.* at *24.

The decisions Petitioner relies on do not require reconsideration of this conclusion.  Those decisions simply reflect case-specific determinations of the materiality of undisclosed impeachment evidence concerning witnesses whose testimony was more central to the prosecution's case than that offered by Schrader. *See Wearry*, 577 U.S. at 393 (witness corroborated "dubious" identification testimony that prosecution relied on to persuade jury to reject petitioner's alibi defense); *Haskell*, 866 F.3d at 146 (witness was only eyewitness who unequivocally identified petitioner as the shooter); *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 299 (3d Cir. 2016) (en banc) (witness was key eyewitness with best view of the shooter); *Bridges*, 706 F. App'x at 84 (witness provided only direct evidence of petitioner's intent to kill); *Lambert v. Beard*, 537 F. App'x 78, 81 (3d Cir. 2013) (nonprecedential) (prosecution's case rested almost entirely on witness's testimony); *Harshman*, 368 F. Supp.3d at 797 (witnesses bolstered prosecution's largely circumstantial case by testifying to admissions by petitioner).

Third, although Petitioner is correct that the court did not consider the importance of Schrader's testimony on the issue of punishment, that is because his petition and supporting brief only addressed materiality with respect to guilt. *See* (Docs. 1, ¶ 43; Doc. 34, pp. 31–32.)  Petitioner now presents an extensive argument on the materiality of Schrader's testimony to the jury's sentencing decision, citing Supreme Court precedent that was available when he filed the

petition.  (Doc. 102, pp. 21–24 (citing *Cone v. Bell*, 556 U.S. 449, 475 (2009), and

*Banks v. Dretke*, 540 U.S. 668, 703 (2004)).)  Rule 59(e) does not provide a

mechanism to raise new arguments that the moving party could have been raised

before the decision issued.  *Banister*, 140 S. Ct. at 1703.  Accordingly, the court

concludes that Petitioner's argument concerning materiality as to punishment,

raised for the first time in his supplemental brief, is not a proper basis for

reconsideration under Rule 59(e).

Finally, Petitioner asserts that, in assessing materiality, the court should have

considered the impact of undisclosed evidence that Curley received incentives for

his testimony against Petitioner.[4]  (Doc. 102, pp. 24–25.)  Petitioner contends that

the court's failure to do so is error under recent Supreme Court and Third Circuit

decisions holding that reviewing courts unreasonably apply *Brady* if they fail to

evaluate the cumulative impact of all suppressed evidence.  (*Id*. at 24.)  In those

cases, however, the courts found that the prosecution suppressed multiple items of

exculpatory or impeachment evidence.  *See Wearry*, 577 U.S. at 394; *Dennis*, 834

F.3d at 311.  That was not the case here, because the court did not find that the

---

[4] In a separate component of Claim I, Petitioner asserts that the Commonwealth suppressed
evidence of an alleged agreement to drop lesser charges against Curley in exchange for his
testimony against Petitioner.  *Koehler-III*, 2015 WL 2344932 at *13.  The court rejected
Petitioner's *Brady* claim but found that his trial counsel performed deficiently by failing to
review a readily available court file that would have revealed that the charges had been dropped.
*Id*. at *17–18.  The court denied relief, however, because it was not persuaded that Petitioner was
prejudiced by counsel's failure to discover and use Curley's court file.  *Id*. at *19.

25

prosecution suppressed any impeachment evidence relating to Schrader and only addressed materiality as an alternative basis for its decision. *Koehler-III*, 2015 WL 2344932, at *24.

For these reasons, the court concludes that reconsideration of the materiality determination is not required on the basis of "intervening changes in controlling law" or "the need to correct a clear error of law . . . or to prevent manifest injustice." *See Blystone*, 664 F.3d at 415 (citation and quotation marks omitted).

### c. *Brecht* prejudice standard

Petitioner argues that the Third Circuit's decision in *Haskell*, 866 F.3d at 152, requires reconsideration of the court's conclusion that any *Giglio* error was harmless under *Brecht*, 507 U.S. at 631. (Doc. 102, pp. 25–26.) In *Haskell*, the Third Circuit held that the *Brecht* actual-prejudice standard does not apply to claims that the state knowingly presented or knowingly failed to correct perjured testimony. *Haskell*, 866 F.3d at 152. Instead, a federal habeas petitioner need only demonstrate a reasonable likelihood that the perjured testimony affected the judgment of the jury. *Id.*

The court concludes that *Haskell* does not require reconsideration. The court addressed prejudice under *Brecht* only as an alternative ground for denying relief. *Koehler-III*, 2015 WL 2344932 at *25. The court also concluded that Petitioner failed to establish any of the elements of a *Giglio* violation. *Id.* at *24.

26

That conclusion and the court's decision to deny relief are unaffected by *Haskell*.

Accordingly, Petitioner has not shown that reconsideration is required on the basis

of "intervening changes in controlling law" or "the need to correct a clear error of

law . . . or to prevent manifest injustice." *See Blystone*, 664 F.3d at 415 (citation

and quotation marks omitted).

### B. The Court Will Not Alter or Amend the Judgment on Claim IV.

Petitioner asserts in his Rule 59(e) motion that he is entitled to relief on

Claim IV. (Doc. 55, pp. 10–12.) Claim IV alleges that Petitioner was denied his

right to an impartial jury because the trial court failed to excuse alternate juror

Mary Ann Schwartz ("Juror Schwartz") for cause after she informed the trial court

that she was troubled by the possibility that she may have seen Petitioner in a car at

a gas station with another adult and a young boy approximately one year earlier.

(Doc. 1, ¶¶ 95–98.) Petitioner further alleges that his trial and appellate counsel

were ineffective by failing to object or pursue the issue on direct appeal. (*Id*. ¶ 99.)

Petitioner's Rule 59(e) motion does not assert any specific error in the

court's decision to deny relief on these claims. (*See* Doc. 55, pp. 10–12.)

Petitioner simply argues that he is entitled to relief because the record "is replete

with indicia of potential bias and concern on the part of Juror Schwartz" and

counsel could have no strategic or tactical reason to fail to object to the trial court's

failure to excuse her. (*Id*.) These arguments are based entirely on the record of the

questioning of Juror Schwartz by the trial court and counsel.  (*Id*.)  The court

reviewed that record and rejected Petitioner's arguments on this point.  *Koehler-III*,

2015 WL 2344932 at *35–37.

      The court does not discern any argument in the Rule 59(e) motion that

Petitioner did not present to the court in his petition and supporting briefs.  (*See*

Docs. 1, ¶¶ 94-100; Doc. 34, pp. 63-67; Doc. 48, pp. 39-40.)  As previously noted,

merely advancing the same arguments previously presented to the court is not a

proper basis for reconsideration under Rule 59(e).  *Lazaridis*, 591 F.3d at 669.  The

court concludes that Petitioner has not shown any basis for reconsideration of the

court's decision to deny relief on Claim IV.  *See Blystone*, 664 F.3d at 415.

### C. The Court Will Not Issue a Certificate of Appealability.

      The court denied a certificate of appealability ("COA") under 28 U.S.C.

§ 2253(c)(2) on the ground that jurists of reason would not debate whether the

court properly resolved the issues presented.  *Koehler-III*, 2015 WL 2344932, at

*104 (citing *Slack v. McDonald*, 529 U.S. 473, 484–85 (2000)).  Petitioner's Rule

59(e) motion includes a general request for reconsideration of the denial of a COA

on the claims addressed in the motion, but without any specific argument on that

point.  (Doc. 55, pp. 3, 12.)  Petitioner's supplemental brief argues more

specifically that the burden to obtain a COA is "a light one," which he has satisfied

with respect to the denial of relief on Claim I.  (Doc. 102, p. 26 (quoting *Bracey v.*

*Superintendent Rockview SCI*, 986 F.3d 274, 283 (3d Cir. 2021)).)  As support,
Petitioner points out that the Pennsylvania Supreme Court did not unanimously
hold that there was no undisclosed agreement that could have been used to
impeach Schrader because Justice Saylor, in a concurring opinion, disagreed with
that conclusion.  (*Id.*, pp. 26–27 (citing *Koehler-II*, 26 A.3d at 162 (Saylor, J.,
concurring)).)

The court is not persuaded it is necessary to reconsider the denial of a COA.
First, Petitioner is entitled to a COA only if he "has made a substantial showing of
the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Although Justice
Saylor disagreed with one aspect of the majority's analysis, he concurred in the
ultimate result.  *Koehler-II*, 26 A.3d at 161–62 (Saylor, J., concurring).  Thus, the
concurring opinion does not show that "reasonable jurists could debate whether
(or, for that matter, agree that) the petition should have been resolved in a different
manner or that the issues presented were adequate to deserve encouragement to
proceed further."  *Slack*, 529 U.S. at 484 (citation and quotation marks omitted).

Second, when AEDPA deference applies to review of a state-court decision,
AEDPA deference likewise governs the decision whether to issue a COA.  *Becker
v. Sec'y Pa. Dep't of Corr.*, 28 F.4th 459, 462 (3d Cir. 2022).  Even state-court
factual findings that are "close calls—decisions upon which reasonable minds
might disagree—are essentially insulated from federal court reversal under

29

AEDPA." *Id.* at 464.  Under that deferential standard, the court concludes that Petitioner has "no debatable claim" that the Pennsylvania Supreme Court unreasonably applied clearly applied clearly established federal law or made an unreasonable determination of the facts in light of the evidence presented.  *See id.*

For the foregoing reasons, the court will not alter or amend the judgment with respect to the court's denial of a COA.  The court also concludes that reasonable jurists would not debate the instant decision to deny Petitioner's Rule 59(e) motion and therefore the court will not issue a COA for that decision.

CONCLUSION

For the reasons stated herein, the court will deny Petitioner's Rule 59(e) motion.  (Doc. 55.)  The court will also decline to issue a COA.  An appropriate order will issue.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  April 1, 2024